*Novoa v. Diaz* et al.,

# Exhibit 3 to Declaration of Adam Steinbaugh in Support of Plaintiffs' Motion for Preliminary Injunction



September 12, 2022    Search Statutes: 2022 [Search]

Home
Senate
House
Citator
Statutes, Constitution, & Laws of Florida
Florida Statutes
Search Statutes
Search Tips
Florida Constitution
Laws of Florida
Legislative & Executive Branch Lobbyists
Information Center
Joint Legislative Committees & Other Entities
Historical Committees
Florida Government Efficiency Task Force
Legislative Employment
Legistore
Links

Interpreter Services for the Deaf and Hard of Hearing




Select Year: 2022 [Go]

# The 2022 Florida Statutes

| Title XLVIII | Chapter 1000 | View Entire Chapter |
|---|---|---|
| EARLY LEARNING-20 EDUCATION CODE | EARLY LEARNING-20 GENERAL PROVISIONS | |

**1000.05  Discrimination against students and employees in the Florida K-20 public education system prohibited; equality of access required.**—

(1)  This section may be cited as the "Florida Educational Equity Act."

(2)(a)  Discrimination on the basis of race, color, national origin, sex, disability, religion, or marital status against a student or an employee in the state system of public K-20 education is prohibited. No person in this state shall, on the basis of race, color, national origin, sex, disability, religion, or marital status, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity, or in any employment conditions or practices, conducted by a public educational institution that receives or benefits from federal or state financial assistance.

(b)  The criteria for admission to a program or course shall not have the effect of restricting access by persons of a particular race, color, national origin, sex, disability, religion, or marital status.

(c)  All public K-20 education classes shall be available to all students without regard to race, color, national origin, sex, disability, religion, or marital status; however, this is not intended to eliminate the provision of programs designed to meet the needs of students with limited proficiency in English, gifted students, or students with disabilities or programs tailored to students with specialized talents or skills.

(d)  Students may be separated by sex for a single-gender program as provided under s. 1002.311, for any portion of a class that deals with human reproduction, or during participation in bodily contact sports. For the purpose of this section, bodily contact sports include wrestling, boxing, rugby, ice hockey, football, basketball, and other sports in which the purpose or major activity involves bodily contact.

(e)  Guidance services, counseling services, and financial assistance services in the state public K-20 education system shall be available to students equally. Guidance and counseling services, materials, and promotional events shall stress access to academic and career opportunities for students without regard to race, color, national origin, sex, disability, religion, or marital status.

(3)(a)  No person shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club, or intramural athletics offered by a public K-20 educational institution; and no public K-20 educational institution shall provide athletics separately on such basis.

(b)  Notwithstanding the requirements of paragraph (a), a public K-20 educational institution may operate or sponsor separate teams for members of each sex if the selection for such teams is based upon competitive skill or the activity involved is a bodily contact sport. However, when a public K-20 educational institution operates or sponsors a team in a particular sport for members of one sex but does not operate or sponsor such a team for members of the other sex, and athletic opportunities for that sex have previously been limited, members of the excluded sex must be allowed to try out for the team offered.

(c)  This subsection does not prohibit the grouping of students in physical education classes and activities by ability as assessed by objective standards of individual performance developed and applied without regard to sex. However, when use of a single standard of measuring skill or progress in a physical education class has an adverse effect on members of one sex, the educational institution shall use appropriate standards which do not have such effect.

(d)  A public K-20 educational institution which operates or sponsors interscholastic, intercollegiate, club, or intramural athletics shall provide equal athletic opportunity for members of both sexes.

1.  The Board of Governors shall determine whether equal opportunities are available at state universities.

2.  The Commissioner of Education shall determine whether equal opportunities are available in school districts and Florida College System institutions. In determining whether equal opportunities are available in school districts and Florida College System institutions, the Commissioner of Education shall consider, among other factors:

    a. Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes.
    b. The provision of equipment and supplies.
    c. Scheduling of games and practice times.
    d. Travel and per diem allowances.
    e. Opportunities to receive coaching and academic tutoring.
    f. Assignment and compensation of coaches and tutors.
    g. Provision of locker room, practice, and competitive facilities.
    h. Provision of medical and training facilities and services.
    i. Provision of housing and dining facilities and services.
    j. Publicity.

Unequal aggregate expenditures for members of each sex or unequal expenditures for male and female teams if a public school or Florida College System institution operates or sponsors separate teams do not constitute nonimplementation of this subsection, but the Commissioner of Education shall consider the failure to provide necessary funds for teams for one sex in assessing equality of opportunity for members of each sex.

  (e) A public school or Florida College System institution may provide separate toilet, locker room, and shower facilities on the basis of gender, but such facilities shall be comparable to such facilities provided for students of the other sex.

  (4)(a) It shall constitute discrimination on the basis of race, color, national origin, or sex under this section to subject any student or employee to training or instruction that espouses, promotes, advances, inculcates, or compels such student or employee to believe any of the following concepts:

  1. Members of one race, color, national origin, or sex are morally superior to members of another race, color, national origin, or sex.
  2. A person, by virtue of his or her race, color, national origin, or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously.
  3. A person's moral character or status as either privileged or oppressed is necessarily determined by his or her race, color, national origin, or sex.
  4. Members of one race, color, national origin, or sex cannot and should not attempt to treat others without respect to race, color, national origin, or sex.
  5. A person, by virtue of his or her race, color, national origin, or sex, bears responsibility for, or should be discriminated against or receive adverse treatment because of, actions committed in the past by other members of the same race, color, national origin, or sex.
  6. A person, by virtue of his or her race, color, national origin, or sex, should be discriminated against or receive adverse treatment to achieve diversity, equity, or inclusion.
  7. A person, by virtue of his or her race, color, sex, or national origin, bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the person played no part, committed in the past by other members of the same race, color, national origin, or sex.
  8. Such virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, national origin, or sex to oppress members of another race, color, national origin, or sex.

  (b) Paragraph (a) may not be construed to prohibit discussion of the concepts listed therein as part of a larger course of training or instruction, provided such training or instruction is given in an objective manner without endorsement of the concepts.

  (5) Public schools and Florida College System institutions shall develop and implement methods and strategies to increase the participation of students of a particular race, color, national origin, sex, disability, or marital status in programs and courses in which students of that particular race, color, national origin, sex, disability, or marital status have been traditionally underrepresented, including, but not limited to, mathematics, science, computer technology, electronics, communications technology, engineering, and career education.

  (6)(a) The State Board of Education shall adopt rules to implement this section as it relates to school districts and Florida College System institutions.

  (b) The Board of Governors shall adopt regulations to implement this section as it relates to state universities.

  (7) The functions of the Office of Equal Educational Opportunity of the Department of Education shall include, but are not limited to:

  (a) Requiring all district school boards and Florida College System institution boards of trustees to develop and submit plans for the implementation of this section to the Department of Education.

  (b) Conducting periodic reviews of school districts and Florida College System institutions to determine compliance with this section and, after a finding that a school district or a Florida College System institution is not in compliance with this section, notifying the entity of the steps that it must take to attain compliance and performing followup monitoring.

(c)  Providing technical assistance, including assisting school districts or Florida College System institutions in identifying unlawful discrimination and instructing them in remedies for correction and prevention of such discrimination and performing followup monitoring.

(d)  Conducting studies of the effectiveness of methods and strategies designed to increase the participation of students in programs and courses in which students of a particular race, color, national origin, sex, disability, or marital status have been traditionally underrepresented and monitoring the success of students in such programs or courses, including performing followup monitoring.

(e)  Requiring all district school boards and Florida College System institution boards of trustees to submit data and information necessary to determine compliance with this section. The Commissioner of Education shall prescribe the format and the date for submission of such data and any other educational equity data. If any board does not submit the required compliance data or other required educational equity data by the prescribed date, the commissioner shall notify the board of this fact and, if the board does not take appropriate action to immediately submit the required report, the State Board of Education shall impose monetary sanctions.

(f)  Based upon rules of the State Board of Education, developing and implementing enforcement mechanisms with appropriate penalties to ensure that public K-12 schools and Florida College System institutions comply with Title IX of the Education Amendments of 1972 and subsection (3) of this section. However, the State Board of Education may not force a public school or Florida College System institution to conduct, nor penalize such entity for not conducting, a program of athletic activity or athletic scholarship for female athletes unless it is an athletic activity approved for women by a recognized association whose purpose is to promote athletics and a conference or league exists to promote interscholastic or intercollegiate competition for women in that athletic activity.

(g)  Reporting to the Commissioner of Education any district school board or Florida College System institution board of trustees found to be out of compliance with rules of the State Board of Education adopted as required by paragraph (f) or paragraph (3)(d). To penalize the board, the State Board of Education shall:

1.  Declare the school district or Florida College System institution ineligible for competitive state grants.

2.  Notwithstanding the provisions of s. 216.192, direct the Chief Financial Officer to withhold general revenue funds sufficient to obtain compliance from the school district or Florida College System institution.

The school district or Florida College System institution shall remain ineligible and the funds shall not be paid until the institution comes into compliance or the State Board of Education approves a plan for compliance.

(8)  A public K-20 educational institution must treat discrimination by students or employees or resulting from institutional policies motivated by anti-Semitic intent in an identical manner to discrimination motivated by race. For purposes of this section, the term "anti-Semitism" includes a certain perception of the Jewish people, which may be expressed as hatred toward Jewish people, rhetorical and physical manifestations of anti-Semitism directed toward a person, his or her property, or toward Jewish community institutions or religious facilities.

(a)  Examples of anti-Semitism include:

1.  Calling for, aiding, or justifying the killing or harming of Jews, often in the name of a radical ideology or an extremist view of religion.

2.  Making mendacious, dehumanizing, demonizing, or stereotypical allegations about Jews as such or the power of Jews as a collective, especially, but not exclusively, the myth about a world Jewish conspiracy or of Jews controlling the media, economy, government or other societal institutions.

3.  Accusing Jews as a people of being responsible for real or imagined wrongdoing committed by a single Jewish person or group, the State of Israel, or even for acts committed by non-Jews.

4.  Accusing Jews as a people or the State of Israel of inventing or exaggerating the Holocaust.

5.  Accusing Jewish citizens of being more loyal to Israel, or the alleged priorities of Jews worldwide, than to the interest of their own nations.

(b)  Examples of anti-Semitism related to Israel include:

1.  Demonizing Israel by using the symbols and images associated with classic anti-Semitism to characterize Israel or Israelis, drawing comparisons of contemporary Israeli policy to that of the Nazis, or blaming Israel for all inter-religious or political tensions.

2.  Applying a double standard to Israel by requiring behavior of Israel that is not expected or demanded of any other democratic nation or focusing peace or human rights investigations only on Israel.

3.  Delegitimizing Israel by denying the Jewish people their right to self-determination and denying Israel the right to exist.

However, criticism of Israel that is similar to criticism toward any other country may not be regarded as anti-Semitic.

(c)  Nothing in this subsection shall be construed to diminish or infringe upon any right

employing this subsection is limited to disruption of rights upon religion protected under the First Amendment to the United States Constitution, or the State Constitution. Nothing in this subsection shall be construed to conflict with federal or state discrimination laws.

(9) A person aggrieved by a violation of this section or a violation of a rule adopted under this section has a right of action for such equitable relief as the court may determine. The court may also award reasonable attorney's fees and court costs to a prevailing party.

**History.**—s. 7, ch. 2002-387; s. 1942, ch. 2003-261; s. 70, ch. 2004-357; s. 66, ch. 2007-217; s. 1, ch. 2008-26; s. 9, ch. 2010-78; s. 4, ch. 2011-5; s. 1, ch. 2019-59; s. 2, ch. 2022-72.

Copyright © 1995-2022 The Florida Legislature • Privacy Statement • Contact Us