*Novoa v. Diaz* et al.,

# Exhibit 25 to Declaration of Adam Steinbaugh in Support of Plaintiffs' Motion for Preliminary Injunction

v.6 08-30-22

## Initial Guidance Florida House Bill 7
## Prohibition of Discrimination in University Training or Instruction

**This document was prepared by the Office of the General Counsel (OGC) and will be updated based on ongoing consultation and as more information is available.  Please refer questions to facultysuccess@usf.edu.**

**What Is It?**

- On March 10, 2022, the Florida Legislature passed Florida House Bill 7/Senate Bill 148 (HB 7) titled the "Individual Freedom Act."
- It amends the Florida Civil Rights Act (FCRA) by *placing limitations on how an employer can discuss certain topics or "concepts" when conducting diversity training in the workplace*.
- It amends the Florida Educational Equity Act (FEEA) by *placing limitations on how certain topics or "concepts" can be discussed as part of any instruction or training to which a student or employee is "subjected."*
- The law takes effect **July 1, 2022**.

**What Does It Say?**

- The new sections 760.10(8)(a) and 1000.05(4)(a), Florida Statutes, state that it is discrimination based on race, color, sex, or national origin to "subject" (a) an individual**, as a condition of employment**, membership, certification, licensing, credentialing, or passing an examination, or (b) a student or employee, "**to training, instruction, or any other required activity that "espouses, promotes, advances, inculcates, or compels" such [individual, student or employee] to believe any of the following concepts**:"

    1. Members of one race, color, sex, or national origin are morally superior to members of another race, color, sex, or national origin.

    2. *An individual*, by virtue of his or her race, color, sex, or national origin, is *inherently racist, sexist, or oppressive, whether consciously or unconsciously.*

    3. *An individual's* moral character or *status as either privileged or oppressed is necessarily determined by his or her race, color, sex, or national origin*.

    4. Members of one race, color, sex, or national origin cannot and should not attempt to treat others without respect to race, color, sex, or national origin.

    5. *An individual, by virtue of his or her race, color, sex, or national origin*, bears responsibility for, or *should be discriminated against or receive adverse treatment because of, actions committed in the past by other members of the same race, color, sex, or national origin.*

v.6 08-30-22

6. *An individual, by virtue of his or her race, color, sex, or national origin, should be discriminated against or receive adverse treatment to achieve diversity, equity, or inclusion.*

7. An individual, by virtue of his or her race, color, sex, or national origin, bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the individual played no part, committed in the past by other members of the same race, color, sex, or national origin.

8. Such virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, sex, or national origin to oppress members of another race, color, sex, or national origin.

- The new sections of the law clarify that they **do NOT "prohibit discussion of the concepts listed above** as part of a course of training or instruction, ***provided such training or instruction is given in an objective manner without endorsement of the concepts***."

- Each university in the SUS is required to have a regulation prohibiting discrimination on the basis of race, color, national origin, or sex by subjecting any student or employee to training or instruction that espouses, promotes, advances, inculcates, or compels such student or employee to believe any of the concepts listed under (1)-(8) above.

- HB 7 may expand the university's civil liability exposure under the FCRA and FEEA if an employee commits a prohibited discriminatory practice.

**Impact on Diversity, Anti-Harassment and Anti-Discrimination Training in Employment**

- It is unclear how broadly courts may interpret section 760.10(8)(a), or to what extent an instructor or trainer discussing the issues bulleted above in workplace training (whether as to diversity initiatives or other anti-harassment policies) may be held to be "endorsing" those concepts. However, caution should be exercised on how the concepts in (1)-(8) above are presented in training.

    o Employees who provide training related to these topics should review their training materials and presentations to determine if the way the material is currently written or presented could be interpreted as "espousing, promoting, advancing, inculcating or compelling belief" in any of the concepts enumerated in (1)-(8) of the new law provisions.

v.6 08-30-22

- o Possible approaches:

    - Consider offering voluntary training that addresses these concepts because training that is not mandatory would not meet the definition in the statute that it is "a condition of employment." Also, mandatory training is not always effective. It is understood that certain workplace training is required to comply with legal and contractual requirements.

    - Consider whether any of the training should be pre-recorded or includes a prepared introductory statement to ensure consistency in the presentation of information and compliance with the law's requirements.

    - To the extent some training or discussion cannot be voluntary, the law provides that discussion of the concepts in (1)-(8) above is not prohibited if "***such training or instruction is given in an objective manner without endorsement of the concepts.***" Therefore, it might be helpful to include a written disclosure in the training or instruction stating that the discussion is intended to be objective. Here is a sample disclaimer:

        *It is fundamental to the University of South Florida's mission to support an environment where divergent ideas, theories, and philosophies can be openly exchanged and critically evaluated in a civil manner. Consistent with these principles, this training may involve discussion of ideas that you find uncomfortable, disagreeable, or even offensive.*

        *In the training context, ideas are intended to be presented in an objective manner and not as an endorsement of what you should believe. Objective means that the idea(s) presented can be tested by critical peer review and rigorous debate, and that the idea(s) is supported by credible research.*

        *Not all ideas can be supported by objective methods or criteria. Regardless, you may decide that certain ideas are worthy of your personal belief. In this training, however, you may be asked to engage with complex ideas and to demonstrate an understanding of the ideas. Understanding an idea does not mean that you are required to believe it or agree with it.*

**Impact on Student Instruction**

- The new law states that it does not prohibit discussion of the concepts identified under (1)-(8) above as part of a larger course of training or instruction, provided such training or instruction is given in an objective manner without endorsement of the concepts.

00212476.DOCX                                                                                                                     3

v.6 08-30-22

- Section 1004.097, Florida Statutes, prohibits a university from shielding a student or employee from ideas and opinions that they may find uncomfortable, unwelcome, disagreeable, or offensive.

- Possible approaches:

    o In the first class meeting, provide instruction on how to engage academically with the concepts in class discussions and in written assignments. Engaging in a topic academically means as an area of intellectual inquiry apart from personal opinions and beliefs. This instruction should be followed with written guidance that students can refer to as needed. Students should be asked to acknowledge the written guidance.

    o Include a written disclaimer in pertinent class documents, such as course syllabi, stating that (a) pursuant to Florida's "Campus Free Expression Act," the university cannot shield students from ideas and opinions they may find uncomfortable, unwelcome, disagreeable, or offensive, and (b) any instructional discussions are intended to be objective. Here is a sample disclaimer:

    > *It is fundamental to the University of South Florida's mission to support an environment where divergent ideas, theories, and philosophies can be openly exchanged and critically evaluated. Consistent with these principles, this course may involve discussion of ideas that you find uncomfortable, disagreeable, or even offensive.*

    > *In the instructional setting, ideas are intended to be presented in an objective manner and not as an endorsement of what you should personally believe. Objective means that the idea(s) presented can be tested by critical peer review and rigorous debate, and that the idea(s) is supported by credible research.*

    > *Not all ideas can be supported by objective methods or criteria. Regardless, you may decide that certain ideas are worthy of your personal belief. In this course, however, you may be asked to engage with complex ideas and to demonstrate an understanding of the ideas. Understanding an idea does not mean that you are required to believe it or agree with it.*

**Frequently Asked Questions Regarding HB 7**

**Question 1: HB 7 states that these new sections of the law "may not be construed to prohibit discussion of the concepts listed therein as part of a course of training or instruction, provided such training or instruction is given in an objective manner without endorsement of the concepts." What do the terms "objective manner" and "without endorsement" mean and how will this be measured/shown?**

**Answer:** There is no case law interpreting the terms "objective manner" or "without endorsement" as used in HB 7, and the legislative history of the new law does not provide insight. The definition of "objectivity" in the Merriam-Webster Dictionary is "lack of favoritism toward one side or another; freedom from bias." Another common definition of objectivity is "uninfluenced by emotions or personal prejudices." The definition of "endorsement" in the Merriam-Webster Dictionary is "sanction or approval."

Based on those common definitions, it would appear that discussion of the topics or concepts identified in (1)-(8) of the new law would need to be uninfluenced by the instructor's emotions, and without the instructor showing subjective favoritism, approval, or personal bias in favor of any of those concepts. Discussion of a concept in an objective manner does not, however, mean that the concept must be discussed in neutral terms. For instance, an instructor need not ignore the weight of research, studies, data, or other indicia of academic or scientific validity regarding a concept when discussing it in class.

We do not know how objectivity or lack of endorsement will be established or measured, but it could be helpful to include written disclaimers in class materials, such as course syllabi, stating that any instructional discussions are intended to be objective and that discussion of certain concepts is an exploration of the concepts and does not represent an endorsement of those concepts by the University or the instructor is not intended to "espouse" or "inculcate" the concepts.

The statutory language also suggests that an instructor cannot give a student a non-passing grade based on the student's rejection of any of the concepts identified in (1)-(8) of the new law. An instructor should still evaluate a student's understanding of ideas and concepts in course work. For example, if a student indicates that an idea is inconsistent with the student's personal beliefs yet can demonstrate the required learning objective, then the student's grade should not suffer.

**Question 2: What do the terms "espouses, promotes, advances, inculcates, or compels such individual to believe" mean, and how will these terms be measured or established?**

**Answer:** There is no case law interpreting these terms in relation to the new law, and the legislative history of the new law does not provide more insight. Therefore, at this time we can only make an educated determination of the intended meaning of those terms based on their common meaning. For example, the term "inculcate," is defined in Merriam-Webster as "to teach or impress by frequent repetition;" "espouse" is defined as "to take up or support as a cause;" "compel" is defined as "to urge forcefully or by overwhelming pressure." All these terms are suggestive of a presentation of the topic or concept in a non-objective manner, attempting to indoctrinate or otherwise urge a student to believe a particular concept.

**Question 3: What do faculty and other University employees who provide instruction or training need to do to comply with this new law?**

**Answer:** Become aware of what this new law says, what it requires and what it prohibits. We suggest that your class materials, including course syllabi, include a disclaimer stating that (a) while the university cannot shield students from ideas and opinions they may find uncomfortable, unwelcome, disagreeable, or offensive, (b) any instructional discussions are intended to be objective, and that discussion of certain concepts do not represent an endorsement of those concepts by the University or by the instructor. When grading student work or tests, do not base the student's grade on the fact that the student does not share or agree with any personal beliefs you may have about any of the concepts in (1)-(8) of the law.

**Question 4: Will it violate HB 7 if a faculty member acknowledges endorsement of a concept if they still provide content about such concept in an objective way?**

**Answer:** How the language in the law will be interpreted is unknown. However, *endorsing* a concept appears to be inconsistent with the plain text of the law. If asked by a student if the faculty member agrees with a concept, the faculty member would be in the best position to simply say that: "my own conclusions and beliefs are not part of the discussion." If that short answer is unhelpful to a learning outcome, then a response could be: "I agree with scholars who argue [insert idea], based on the weight of research, arguments presented, or the lack of objective support for the opposing view [insert all objective reasons that apply]. You should understand the objective support for the ideas presented so that you can form your conclusions based on the material."

**Question 5: Who carries the burden of proving claims of discrimination under HB 7?**

**ANSWER:** Generally, the person who raises the claim has the ultimate burden of proving it.

The Florida Board of Governors has issued BOG Regulation 10.005, outlining the reporting and investigating requirements of Universities for HB7 (https://www.flbog.edu/wp-content/uploads/2022/07/10.005NoticeofNewProposedRegulationJune2022-1.pdf).  USF Regulations and Policies have been updated accordingly. Specifically USF Regulation 10-200 (https://usf.app.box.com/v/usfregulation10200) and USF Policy 0-007 (https://usf.app.box.com/v/usfpolicy0-007), provide for the filing of HB7-related complaints with the Office of Compliance and Ethics, EO office (https://www.usf.edu/compliance-ethics/equal-opportunity/file-an-eo-complaint.aspx) Any potential matters arising out of a complaint of a violation of the law's provisions will be handled in accordance with University policies and procedures governing due process and progressive discipline, including any applicable collective bargaining agreements.

**Question 6: Do faculty still have control over the classroom environment and their presentation of information?**

**ANSWER:** USF affirms the principles of Academic Freedom and Responsibility.  These principles are rooted in a conception of the University as a community of scholars united in the pursuit of knowledge and wisdom in an atmosphere of inclusivity, engagement with diverse ideas, and dialogue. The University respects and supports the professional judgment of all faculty in their right to select topics for teaching and research, including issues related to race, gender, class, disability, and sexuality, among others. This implies the understanding that while material reflecting diverse perspectives may at times make some people feel uncomfortable, this is part of a rigorous education that provides the tools necessary for responsible and engaged citizenship in the twenty-first century.

The University is committed to supporting its faculty and is supportive of practices and protocols that establish a culture that values the teaching of issues including, but not limited to, those related to equity, social justice and accountability and create a space that supports faculty who do this work. Likewise, the University supports a culture that prepares students for productive interactions in class and beyond on these issues.

v.6 08-30-22

**Question 7: Is there a recommendation for how to handle student disruptions in the classroom related to this new law? (For example, how can faculty respond to a student who wants to advocate for certain topics, such as replacement theory or critical race theory, in class?)**

**ANSWER:** HB 7 specifically states that the new law may not be "construed to prohibit discussion of the concepts listed therein as part of a course of training or instruction, *provided such training or instruction is given in an objective manner without endorsement of the concepts.*" Therefore, an instructor may cover and discuss topics related to the concepts described in subsections (1)-(8), if they are relevant to the course and discussed in "an objective manner" without the instructor endorsing any of those concepts. If a student wishes to discuss a topic that falls under subsections (1)-(8), the discussion should follow similar parameters (objective discussion without actual "endorsement" of the concept from the instructor).

In general, disruptive behavior from students in the classroom should be handled using existing protocols and processes, including those detailed in USF Regulation 3.025: Disruption of Academic Process. The specific manner in which to handle a disruption will depend on the facts and circumstances surrounding the event. Some available processes or protocols to manage classroom disruption include:

- If practicable and reasonable, the instructor could engage with the student and explain why the comment or behavior is disruptive.
- The instructor could end class.
- The instructor could ask the student to leave class or impose restrictions on the student after the conclusion of the class.
- After class, if appropriate, the instructor may file an Academic Disruption Incident Report, refer the conduct to the Office of Student Conduct & Ethical Development, or submit an incident report to the Office of Compliance and Ethics.
- Immediate referral to law enforcement where the disruption involves a threat to physical safety of the instructor, the student, or others.

**Sources Referenced:**
USF 6.0021 Student Code of Conduct
USF 3.025 Disruption of Academic Process
USF 0-007 Diversity and Equal Opportunity - Discrimination and Harassment