# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | |
|---|---|
| ADRIANA NOVOA, et al., | |
| *Plaintiffs*, | Case No. 4:22-cv-324-AW-MAF |
| v. | |
| MANNY DIAZ, JR., et al., | |
| *Defendants*. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

*Counsel for Defendants Manny Diaz, Jr., et al.*

September 30, 2022

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

STANDARD OF REVIEW ....................................................................3

    I.    Plaintiffs Lack Standing To Challenge the First, Second, Third, Fourth, Fifth, Sixth, and Eighth Concepts...................................4

    II.   Plaintiffs Rechek and the First Amendment Forum Lack Standing. .......11

    III.   Plaintiffs' Claim under the Campus Free Expression Act Is Barred by the Eleventh Amendment. ..................................................14

    IV.   The Complaint Should Be Dismissed Because Plaintiffs Have Failed To State a Claim Under the Free Speech or Due Process Clauses or the Campus Free Expression Act. ...........................................15

CONCLUSION ..................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................4

*Davis v. FEC*, 554 U.S. 724, 734 (2008) ...................................................................4

*Ex Parte Young*, 209 U.S. 123 (1908) ....................................................................14

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)...........................................................................................12

*Laird v. Tatum*, 408 U.S. 1 (1972) .........................................................................11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...............................1, 2, 12, 13

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) ........................................................................4

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)......................................................................................14, 15

*Raygor v. Regents of Univ. of Minn.*,
    534 U.S. 533 (2002)...........................................................................................14

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ..........................................1

*Williams v. Poarch Band of Creek Indians*,
    839 F.3d 1312 (11th Cir. 2016) ..................................................................3, 4

*Ziyadat v. Diamondrock Hosp. Co.*,
    3 F.4th 1291 (11th Cir. 2021) ........................................................................4


**Rules and Statutes**

Fed. R. Civ. P.
    12(b)(1) ..............................................................................................................3
    12(b)(6) ..............................................................................................................3

FLA. STAT.
    § 1004.097 ........................................................................................................3

FLA. STAT.
    § 1000.05(2)(a) ................................................................................................3
    § 1000.05(4)(a) ................................................................................................1

§ 1000.05(4)(a)(3) .......................................................................................6, 9

§ 1000.05(4)(a)(7) ...................................................................................5, 6, 8, 9

§ 1000.05(4)(a)(8) ..........................................................................................7

§ 1000.05(4)(b) ...............................................................................................6

2022 Fla. Laws 72 ..........................................................................................2

## **Other Authorities**

2 THE RECORDS OF THE FEDERAL CONVENTION OF 1787
     (Max Farrand ed., 1911) ...................................................................1

Motion to Dismiss in *Pernell v. Fla. Bd. of Govs. of the State Univ. Sys.*,
     No. 4:22-cv-304, Doc 51 (N.D. Fla. Sept. 22, 2022) ...................2, 3

Defs.' Mem. of Law in Support of Mot. To Dismiss, *Pernell v. Fla. Bd.
     of Govs. of the State Univ. Sys.*, No. 4:22-cv-304-MW-MAF, Doc. 51-1
     (Sept. 22, 2022) ("*Pernell* MTD") ...................................................2

Order, *Falls v. DeSantis*, No. 4:22-cv-166, Doc. 68
     (N.D. Fla. July 8, 2022) ..................................................................10

Defs.' Resp. in Opp. to Pls.' Mot. for Preliminary Injunction, *Pernell v. Fla. Bd.
     of Govs. of the State Univ. Sys.*, No. 4:22-cv-304-MW-MAF,
     Doc. 52 (Sept. 22, 2022) ("*Pernell* PI Opp.") .........................2, 15

## INTRODUCTION

Article III grants federal courts the power to "decide only matters 'of a Judiciary Nature,'" not to "issue advisory opinions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting 2 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 430 (Max Farrand ed., 1911)). Accordingly, a plaintiff can call upon the federal courts to adjudicate grievances against a state law only if the plaintiff demonstrates that the law in fact causes some "concrete and particularized" injury that is "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiffs' claims fall short of Article III's injury requirements in multiple respects. First, no Plaintiff adequately alleges any injury caused by the First, Second, Third, Fourth, Fifth, Sixth, or Eighth concepts set out in the Individual Freedom Act (the "Act"), FLA. STAT. § 1000.05(4)(a), so all Plaintiffs lack standing to challenge these concepts. Plaintiffs do not *even allege* any injury arising out of concepts 1, 2, 4, 5, 6, or 8; and their allegations as to the Third concept rely almost exclusively on historical descriptions of past understandings of race that do *not* violate the Act, which applies only to an educator's current personal endorsement of any of the prohibited concepts.

Second, Plaintiffs Rechek and the First Amendment Forum lack standing and should be dismissed because they have not alleged any injury caused by the Act that

1

is both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560–61. This includes their First Amendment claims and their claim under the Campus Free Expression Act. Third, Plaintiffs' Campus Free Expression Act claim falls outside this Court's jurisdiction even if Plaintiffs, or anyone, had standing to bring it, because it is barred by the Eleventh Amendment. Finally, the Complaint should be dismissed entirely under Rule 12(b)(6) because Plaintiffs fail to state any claim for the reasons set out in Defendants' Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction, which is filed contemporaneously with this Memorandum.

## BACKGROUND

This case challenges Florida's Individual Freedom Act. *See* 2022 Fla. Laws 72. The provisions of the Act are discussed at length in Defendants' Motion to Dismiss in *Pernell v. Fla. Bd. of Govs. of the State Univ. Sys.*, No. 4:22-cv-304,[1]

---

[1] After Plaintiffs filed their motion for a preliminary injunction, the Court established a briefing schedule providing for this case to be briefed in tandem with *Pernell*, with Defendants filing a supplemental brief that addresses only those issues and arguments that are unique to the *Novoa* Plaintiffs—fully incorporating the briefs filed on behalf of Defendants in *Pernell*. *See* Defs.' Mem. of Law in Support of Mot. To Dismiss, *Pernell v. Fla. Bd. of Govs. Of the State Univ. Sys.*, No. 4:22-cv-304-MW-MAF, Doc. 51-1 (Sept. 22, 2022) ("*Pernell* MTD"); Defs.' Resp. in Opp. to Pls.' Mot. for Preliminary Injunction, *Pernell v. Fla. Bd. of Govs. of the State Univ. Sys.*, No. 4:22-cv-304-MW-MAF, Doc. 52 (Sept. 22, 2022) ("*Pernell* PI Opp."). Defendants therefore fully incorporate their *Pernell* briefs, and all arguments and defenses asserted therein, and they submit this brief to address additional points raised by Plaintiffs in this action.

Doc 51 (N.D. Fla. Sept. 22, 2022), and that discussion is incorporated herein by reference. In summary, the Act amended the Education Code to provide that espousing, promoting, advancing, inculcating, or compelling a student to believe any of eight enumerated concepts constitutes "discrimination on the basis of race, color, national origin, [or] sex." FLA. STAT. § 1000.05(2)(a) (as amended by the Act).

The Plaintiffs in this latest challenge to the Act are one University of South Florida ("USF") professor, Adriana Novoa; one USF student, Samuel Rechek; and one USF student group, the First Amendment Forum. Together, Plaintiffs argue that the Act violates their rights under the First Amendment. Plaintiff Novoa also argues that the Act violates her rights under the Fourteenth Amendment's Due Process Clause, and Plaintiffs Recheck and the First Amendment Forum argue that the Act violates their rights under the "Campus Free Expression Act," FLA. STAT. § 1004.097.

Defendants now move to dismiss Plaintiffs' claims in their entirety or, alternatively, in part, under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

Rule 12 provides that a claim may be dismissed for either "lack of subject-matter jurisdiction" or "failure to state a claim upon which relief can be granted." *Id.* Under Rule 12(b)(1), "[t]he burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of*

*Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016). The plaintiff "must clearly and specifically set forth facts to satisfy" the injury-in-fact requirement. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924–25 (11th Cir. 2020) (cleaned up).

"Under Rule 12(b)(6), a court should dismiss [a claim] … when the plaintiff's factual allegations, if true, don't allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (cleaned up). The court must "view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true," but it cannot credit "mere conclusory statements," *id*. at 1295–96, and a plaintiff's allegations must be supported with enough detail to "nudge[ ] their claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## I.   Plaintiffs Lack Standing To Challenge the First, Second, Third, Fourth, Fifth, Sixth, and Eighth Concepts.

"Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (cleaned up) (citation omitted). Accordingly, Plaintiffs cannot leverage an alleged injury under *one* of the Act's eight concepts into a challenge against—and entitlement to a preliminary injunction barring the enforcement of—*other* prohibited concepts that they have alleged no intention of espousing, not to mention the Act as a whole. And in total, Plaintiffs

have adequately alleged injuries related only to *a single* provision of the Act—Concept 7—and they have alleged *no* injury for the remaining seven provisions.

Plaintiff Novoa alleges that she is injured by the Act's prohibition on classroom advocacy of the Seventh concept, because she wishes to teach that "[a] person, by virtue of his or her race, color, sex, or national origin, bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the person played no part, committed in the past by other members of the same race, color, national origin, or sex." FLA. STAT. § 1000.05(4)(a)(7); *see* Pls.' Verified Compl. for Decl. & Inj. Relief ("Compl."), Doc. 1 ¶¶ 178(a), 206, 211 (Sept. 6, 2022). For example, Plaintiff Novoa alleges that she uses in her teaching a reading entitled *Collective Guilt and the Crucifixion*, which defends the idea "that a person may share the guilt of others who have committed a crime by being a member of the same 'collective', the same social group," and that in connection with this reading, she advances the idea that individuals bear personal responsibility and guilt for past acts committed by others, in which they played no part. *Id.* ¶¶ 203, 206–11. Specifically, Plaintiff Novoa says she "speaks about the collective responsibility that Argentina had in the treatment and extermination of indigenous peoples" and that "by virtue of her Argentine national origin, she 'bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of [past] actions, in which [she] played no part." *Id.*

¶¶ 209, 211. We concede that this forthright verified allegation gives her standing to challenge concept number Seven with respect to national origin.

Plaintiff Novoa also alleges that she is harmed by the Act's Third concept, because she wishes to teach that "[a] person's moral character or status as either privileged or oppressed is necessarily determined by his or her race, color, national origin, or sex." FLA. STAT. § 1000.05(4)(a)(3); *see* Compl, ¶¶ 162, 171, 178, 180, 187, 194, 205. Her challenges to this concept, however, are founded on a fundamental misunderstanding of what it actually proscribes. In describing what parts of her teaching she believes will violate this concept, Plaintiff Novoa relies exclusively on historical descriptions of past understandings of race that she covers in her classes. And the Act simply does not cover these kinds of descriptions.

The Act concerns an educator's personal contemporary *endorsement* of the enumerated concepts. *See* FLA. STAT. § 1000.05(4)(b) (Act does not apply to "discussion of the concepts … given … without endorsement of the concepts."). The Act prohibits statements about *the present*: "A person's … status as either privileged or oppressed *is* necessarily determined by his or her race …", *id*. § 1000.05(4)(a)(3), and "[a] person, by virtue of his or her race … *bears* personal responsibility for and must *feel* guilt … because of actions … committed in the past by other members of the same race," *id*. § 1000.05(4)(a)(7) (emphasis added). By contrast, the Act does

not, in the main, prohibit descriptive, historical discussion of racism in the past.[2] If, for example, a professor instructs students that in some period in history, individuals' status as either privileged or oppressed *was* necessarily determined by race, that instruction does not violate the Act. The professor has merely described historical factual circumstances, not personally *endorsed* the view that an individual's status today *is* necessarily determined by race.

Once this distinction is seen, Plaintiff Novoa's claim with regard to her course "Science in Cultural Context" falls apart. The only violations of the Act that she alleges would arise from that course concern factual descriptions of historical understandings of race. For example, Plaintiff Novoa says she teaches the unremarkable factual proposition "that the history of science is replete with examples of individuals' national origin, color, or race determining their status as privileged." Compl. ¶ 160 (cleaned up). She likewise describes how many scholars have "assume[d]" that Latin American scientists were "derivative thinkers" when compared to European scientists in Argentina between 1870 and 1920. *Id*. ¶ 161. And she assigns a text called *Picturing Tropical Nature* by Nancy Stepan, which

_____

[2] The only concept that concerns *past* acts is Concept 8: that "[s]uch virtues as merit, excellence, hard work, fairness, neutrality, objectivity, and racial colorblindness are racist or sexist, or were created by members of a particular race, color, national origin, or sex to oppress members of another race, color, national origin, or sex." FLA. STAT. § 1000.05(4)(a)(8). Plaintiffs do not allege that they wish to teach this concept.

discusses how, through human sciences, "racial differences between human groups became a chief means by which the human world was mapped" during the eighteenth and nineteenth centuries. *Id*. ¶¶ 168, 170, *see also* Ex. F. to Decl. of Adriana Novoa in Supp. of Pls.' Mot. for Prelim. Inj., Doc. 19-37, at 4 (Sept. 15, 2022). None of these statements violate the Act, because they are merely factual descriptions about historical understandings of race, not Plaintiff Novoa's present endorsement of any of the Act's enumerated concepts.

Similarly, Plaintiff Novoa has failed to allege any way in which her "History of Sports from National to Global Contexts" course violates the Act. She alleges that the readings she assigns in this course violate the Act's Third concept, because they:

- Describe how some Afro-Latin baseball players have been perceived as "having traveled a less precarious path" or have not been "recognized as black" because of their Latin heritage. Compl. ¶ 178(b)–(d).

-  Reject the "understanding of integration [of baseball] as a redemption … enacted by whites." *Id*.

- Claim that "corporate America … opposes policies to promote full employment, universal health care, and affordable housing for all." *Id*. ¶ 185.

- Argue that white Americans have historically been privileged to the detriment of non-white groups, including in sports. *Id*. ¶ 193.

None of these excerpts violate the Act, because none *endorse* the concept that a person's "status as … privileged … is necessarily determined by his … race [or] national origin"—*today*, not at some period in the past. Fla. Stat. §

1000.05(4)(a)(7). Nor does Plaintiff Novoa claim that *she* does or would endorse that concept in her classroom. She says she tells students "that Afro-Latino baseball players, despite coming from different backgrounds and cultures, *were* reduced to their perceived racial identity" in the past, Compl. ¶ 180 (emphasis added). As explained, that factual description of the historical treatment of Afro-Latino ball players does not implicate the Act. And surely she does not *endorse* that discriminatory treatment.

The only intended teaching from this class that even comes close to a *present* personal endorsement of one of the Act's prohibited concepts is the statement, in one of the readings, that "Blacks and Latinos still feel the sting of discrimination in the workplace and by the police and the criminal justice system." *Id.* ¶ 184. But even assuming that Plaintiff Novoa intends to endorse and inculcate this idea, rather than discuss it objectively, it *still* does not violate the Act, because it does not endorse the view that a person's status as privileged or oppressed is "*necessarily* determined" by their race—as opposed to being determined, at least in part, by the continuing repercussions of past acts of racism, such as prior "residential segregation." *Id.*; FLA. STAT. § 1000.05(4)(a)(3).

Indeed, nothing alleged about this course violates the Seventh concept, either. Plaintiff Novoa says that the readings she assigns in this course describe how some black baseball figures are "elevated in discourse about segregation" in baseball

because "they offer 'absolution' to (and 'assuage the guilt' of) white people," and she claims this teaching endorses the concept, that a person "must feel guilt [or] anguish ... because of actions ... committed in the past by other[s]." Compl. ¶ 178(a). But nothing in these allegations endorses the view that any person *must feel* guilt or anguish because of past racism in which that person played no part. *See* Order, *Falls v. DeSantis*, No. 4:22-cv-166, Doc. 68, at 9–10 (N.D. Fla. July 8, 2022). At most, the reading could suggest that some white people *have felt* such guilt and have elevated certain black players to assuage it.

Plaintiff Novoa makes one more allegation regarding the Third concept in the context of her "Modern Latin America" course, but it again refers only to her intention to offer a factual description of historical understandings of race to her students. She says that in describing the concept of "collective guilt" she "must 'advance' the concept that a person's 'status as ... privileged ... is necessarily determined by his or her race [or] color[]' *in certain cultures* to explain *how societies have experienced collective guilt* based on race, color, and national origin." Compl. ¶ 205 (emphasis added). That is a reference to "other cultures" and their *past* experiences, which the Act does not implicate. It is not a present endorsement of the Act's Third concept.

Accordingly, nothing in her teaching about the alleged content of the courses "Science in Cultural Context" or "History of Sports from National Global Contexts"

10

would violate the Act. Plaintiffs' allegations about these courses are based on an alleged "subjective 'chill'" rather than an objectively reasonable "threat of specific future harm" under the Act, which she must allege in order to state a claim. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Additionally, none of Plaintiff Novoa's allegations of the Act's Third concept implicate the Act because across all three courses, her allegations pertain to historical descriptions of past understandings of race, often adopted by other cultures. And, again, Plaintiffs *do not even allege* any injury resulting from the First, Second, Fourth, Fifth, Sixth, and Eighth concepts. They therefore lack standing to challenge any of the Act's enumerated concepts except the Seventh concept, and their claims against those concepts should be dismissed.

## II.   Plaintiffs Rechek and the First Amendment Forum Lack Standing.

Plaintiffs Rechek and the First Amendment Forum lack standing and should be dismissed as to all claims against all Defendants.

Plaintiff Rechek's standing is entirely derivative of Plaintiff Novoa's standing. Even assuming, for purposes of this motion to dismiss, that Plaintiff Rechek can assert some sort of constitutional right to receive information, the only specific information he alleges the Act will deny him is "academic discussion concerning topics prohibited by the ... Act in the Science in Cultural Context course" that Professor Novoa teaches. Compl. ¶ 230 (emphasis omitted). And as just demonstrated, Professor Novoa's allegations fail to show how any part of her

"Science in Cultural Context" course would violate the Act. Accordingly, Plaintiff Rechek has failed to allege how the Act will deprive *him* of receiving any information that Professor Novoa would otherwise teach.

Likewise, the First Amendment Forum has failed to allege an actual and imminent injury posed by the Act. Plaintiff Rechek is the only member of the First Amendment Forum named in the Complaint, and as shown, he has failed to adequately allege any injury. That is fatal to the association's standing as well. For under the familiar test for associational standing, an association may assert the rights of its members only if, *inter alia*, "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Complaint also alleges generically that "[o]ther members of the First Amendment Forum are also interested in taking Professor Novoa's courses, as well as other courses offered by USF, free from the censorship" they claim the Act will cause. Compl. ¶ 232. That is plainly insufficient. Standing requires that a plaintiff allege an injury that is both "concrete and particularized" and "actual or imminent," *Lujan*, 504 U.S. at 560. The Complaint's sparse allegations on behalf of the First Amendment Forum's members do not meet either standard.

The Complaint's mere reference to "other courses offered by USF" is insufficient to demonstrate a "concrete and particularized" injury. *Id.*; Compl. ¶ 232.

12

The Complaint does not allege *which* USF courses members of the First Amendment Forum would take, what parts of those courses the Act would constrain, or which prohibited concepts in the Act would be implicated. The Complaint's generic reference to "other courses" is insufficiently concrete and particularized to state a claim, and it is *certainly* insufficiently concrete and particularized to permit a preliminary injunction to be issued. *See Lujan*, 504 U.S. at 561 ("[E]ach element [of standing] must be supported … with the manner and degree of evidence required at the successive stages of the litigation.").

Moreover, the Complaint alleges only that the members of the First Amendment Forum "are … *interested in* taking Professor Novoa's [or others'] courses." Compl. ¶ 232 (emphasis added). "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" that the Supreme Court has required to support standing. *Lujan*, 504 U.S. at 564.

For the same reasons, neither Plaintiff Rechek nor the First Amendment Forum have standing to allege a violation of the Campus Free Expression Act. *See* Compl. ¶¶ 356–367. Their claim under the Campus Free Expression Act depends on the Act operating to deprive them of information, *id.* ¶¶ 360–62, but they have failed to allege any way in which the Act does so.

13

Because neither Plaintiff Rechek nor the First Amendment Forum have standing, the Complaint's First Cause of Action should be dismissed as to them, and the Complaint's Fourth and Seventh Causes of Action should be dismissed entirely.

### III.   Plaintiffs' Claim under the Campus Free Expression Act Is Barred by the Eleventh Amendment.

Even if a plaintiff had alleged standing to bring it, Plaintiffs' Seventh Cause of Action, alleging a violation of the Campus Free Expression Act, also fails because it is barred by Florida's sovereign immunity under the Eleventh Amendment. While the legal fiction established in *Ex Parte Young*, 209 U.S. 123 (1908), allows plaintiffs to seek federal-court injunctive relief preventing state officials from violating *federal* rights, that doctrine is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). As the Supreme Court has explained,

> In such a case the entire basis for the doctrine of *Young* and *Edelman* disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* Accordingly it is black-letter law that "the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–41 (2002)

14

(quoting *Pennhurst*, 465 U.S. at 118, 120). Plaintiffs' Campus Free Expression Act cause of action is just such a claim, and it is thus barred by the Eleventh Amendment.

## IV.   The Complaint Should Be Dismissed Because Plaintiffs Have Failed To State a Claim Under the Free Speech or Due Process Clauses or the Campus Free Expression Act.

Finally, the Complaint should be entirely dismissed because Plaintiffs fail to state any claim relief, as demonstrated in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, filed contemporaneously with this Motion, as well as the Memorandum in Opposition to the Preliminary Injunction in *Pernell*, all of which are hereby incorporated by reference. All of Plaintiffs' Free Speech and vagueness claims fail on their merits. The Act's educational provisions regulate only curricular speech, which is pure government speech, so the First Amendment simply does not apply; and even if it did, the State's indisputably compelling interest in preventing its educators from espousing the prohibited concepts, which the State condemns as discriminatory and abhorrent, to Florida's students would justify any burden the Act may place on the Free Speech rights of individual professors to advocate, or students to hear, those ideas through the State's voice and on the State's dime. And because the Act gives fair notice in readily understood language of the conduct it prohibits, it is not unconstitutionally vague.

Plaintiffs' Third Cause of Action, which alleges that the Act "imposes a legislative prior restraint," Compl. ¶ 288, also fails to state a valid claim. As

explained in our brief opposing a preliminary injunction, pp. 10-11, the Act plainly does not constitute a prior restraint, because any adverse consequences that may be brought to bear upon USF Plaintiffs for violating the Act will be brought to bear *only after Plaintiff Novoa has violated the Act* and USF has failed to correct the violation. When a law imposes consequences for speech that kick in *after* the speech has been uttered, not before, there is no prior restraint.

Finally, in addition to falling outside of this Court's jurisdiction, Plaintiffs' Seventh Cause of Action, alleging a violation of the Campus Free Expression Act, also fails as a matter of law for the reasons explained in the Preliminary Injunction Opposition, pp. 21-22.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

Date: September 30, 2022          Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070DC)
John D. Ohlendorf (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
ccooper@cooperkirk.com
johlendorf@cooperkirk.com

mwold@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Defendants Manny Diaz, Jr., et al.*

17

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Defendant's Memorandum of Law in Support of Motion to Dismiss, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 3,921 words as measured by Microsoft Office for Word 365.

/s/     Charles J. Cooper
Charles J. Cooper