## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ADRIANA NOVOA, *et al.*,

      *Plaintiffs,*

  v.

MANNY DIAZ, JR., in his official
capacity as the Commissioner of
the Florida State Board of
Education, *et al.*,

      *Defendants.*

Case No. 4:22cv324-MW/MF

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

---

GREG HAROLD GREUBEL*
PA. Bar No. 321130; NJ No.
171622015
ADAM STEINBAUGH*
PA. Bar No. 326475
JT MORRIS*
TX Bar No. 2409444
FOUNDATION FOR INDIVIDUAL RIGHTS
   AND EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel:   (215) 717-3473
greg.greubel@thefire.org
adam@thefire.org
jt.morris@thefire.org
*Admitted *Pro Hac Vice*

GARY S. EDINGER, ESQUIRE
Fla. Bar No. 0606812
BENJAMIN, AARONSON,
   EDINGER & PATANZO, P.A.
305 N.E. 1st Street
Gainesville, Florida 32601
Tel:   (352) 338-4440
Fax:  (352) 337-0696
GSEdinger12@gmail.com

*Counsel for Plaintiffs Adriana Novoa, Sam Rechek, and the First
Amendment Forum*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ......................................................................................... 1

STATEMENT OF FACTS.............................................................................2

I.    Novoa's Instruction of Course Materials and Classroom
      Discussions Would Violate the Stop WOKE Act. ..................................3

II.   But for the Stop WOKE Act, Recheck and Members of the First
      Amendment Forum would receive instruction on concepts
      prohibited by the Stop WOKE Act....................................................... 8

ARGUMENT .................................................................................................9

I.    Plaintiffs Have Standing to Challenge the Stop WOKE Act.................9

      A.    The Stop WOKE Act proscribes Novoa's instruction of
            course materials and classroom discussions. ...........................10

      B.    Novoa has standing to challenge all eight concepts of the
            Stop WOKE Act because they impose an
            unconstitutionally vague, overbroad, and viewpoint
            discriminatory prior restraint on her speech. ..........................14

      C.    Recheck and First Amendment Forum Have Standing. ........... 17

II.   Florida Waived Eleventh Amendment Immunity by Allowing
      Suits Against Public Education Institutions. ...................................... 17

III.  Plaintiffs Have Sufficiently Pled That the Stop WOKE Act
      Violates the First Amendment...............................................................19

CONCLUSION............................................................................................ 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)..................22

CERTIFICATE OF SERVICE .......................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexdex Corp. v. Nachon Enters.*,
    641 So.2d 858 (1994) ...................................................................... 19

*Austin v. Univ. of Fla. Bd. of Trs.*,
    580 F. Supp. 3d 1137 (N.D. Fla. 2022) ............................................. 16

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
    451 F.3d 1257 (11th Cir. 2006) .......................................................... 16

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ........................................................................... 14

*Falls v. DeSantis*,
    No. 4:22-cv-166-MW-MJF (N.D. Fla. July 8, 2022) ................... 14, 17

*Fla. Virtual Sch. v. K12, Inc.*,
    148 So.3d 97 (Fla. 2014) .................................................................... 18

*Harrell v. Fla. Bar*,
    608 F.3d 1241 (11th Cir. 2010) .......................................................... 14

*Honeyfund.com, Inc. v. DeSantis*,
    No. 4:22CV227-MW/MAF, 2022 WL 3486962
    (N.D. Fla. Aug. 18, 2022) .................................................................. 15

*Speech First, Inc. v. Cartwright*,
    32 F.4th 1110 (11th Cir. 2022) ........................................................... 11

*U.S. v. Nat'l Treasury Emps. Union*,
    513 U.S. 454 (1995) ........................................................................... 19

## Statutes

Fla Stat. § 1004.097(4) .......................................................................... 18

Fla. Stat. § 1001.72(1) ........................................................................... 18

Fla. Stat. § 1004.097 ............................................................................. 18

Under Local Rule 7.1(E) and this Court's Order of September 21, 2022 (ECF No. 29), Plaintiffs Adriana Novoa, Samuel Rechek, and the First Amendment Forum ("1AF") respectfully submit this memorandum in opposition to Defendants' Motion to Dismiss (ECF No. 33).

## **INTRODUCTION**

In this First Amendment lawsuit, Plaintiffs are a college professor, student, and student group seeking to protect their constitutional rights. All three have alleged concrete, particularized, and imminent—if not actual—injury traceable to the Stop WOKE Act and its blanket viewpoint-driven restrictions of speech at Florida's public universities and colleges. Thus, they all have standing to challenge the Stop WOKE Act's constitutionality, including each of the eight concepts it purports to eradicate from higher education.

Defendants fail to show otherwise. Indeed, Defendants admit Professor Novoa has standing to challenge at least part of the Act. What's more, Defendants ignore and misconstrue the facts in the Complaint showing that the Stop WOKE Act harms Novoa's ability to freely teach her classes about both historical events *and* the current implications of the concepts forbidden by the Act. This same harm shows why the student plaintiffs, Recheck and 1AF, also have standing: Their education is restricted

1

by all eight of the State-imposed viewpoint restrictions. And Defendants also overlook Plaintiffs' vagueness and overbreadth claims, which establish standing to challenge all relevant parts of the Act, not just the eight concepts to which Defendants limit their arguments.

Defendants' other arguments in favor of dismissal also fail. The State of Florida waived sovereign immunity over lawsuits under the Campus Free Expression Act ("CFEA"); the CFEA expressly allows aggrieved parties to sue a university or college for violating the Act. Accordingly, Defendants' Eleventh Amendment argument for dismissing Recheck and 1AF's CFEA claim against the USF's Board of Trustees must fail. And for all the reasons explained in Plaintiffs' preliminary injunction briefing, Plaintiffs have shown not only a plausible First Amendment challenge to the Stop WOKE Act, but that they are likely to succeed on it. That showing defeats Defendants' catch-all plea that the Court "entirely dismiss" Plaintiffs' lawsuit.

For all these reasons, the Court should deny Defendants' motion to dismiss.

## **STATEMENT OF FACTS**

The Stop WOKE Act injures Professor's Novoa's First Amendment right to academic freedom and the rights of student Rechek and 1AF to receive information free from a pall of orthodoxy.

## I.     Novoa's Instruction of Course Materials and Classroom Discussions Would Violate the Stop WOKE Act.

Novoa is an associate professor of history at the University of South Florida ("USF"), where she has taught as a professor since 2001. Pls.' Verified Compl., ECF No. 1, ("Compl.") ¶ 10. Novoa teaches several undergraduate courses at USF. Compl. ¶ 11. Novoa's instruction in each of these three courses (and others) involves "advancing" concepts prohibited by the Stop WOKE Act. *Id.* ¶ 12.

Since the Stop WOKE Act was enacted, Novoa has been reviewing her syllabi from each of her courses to determine if the Act prohibits any assigned materials or lecture topics. *Id.* ¶ 148. Novoa has found several assigned readings and lecture topics that she must remove to comply with the Stop WOKE Act and avoid its penalties, including termination and funding losses for her and her fellow faculty. *Id.* ¶¶ 90–92, 149.

The Stop WOKE Act chills Novoa's freedom to discuss the subjects of three of her courses: (1) Science in Cultural Context, (2) History of Sports from National to Global Contexts, and (3) Modern Latin America. *Id.* ¶¶ 147, 151.

***Science and Cultural Context.*** Novoa will teach Science and Cultural Context in the Spring 2023 semester. *Id.* ¶ 152. The goal of this class is both historical and contemporary: it aims "to understand the complicated

ways in which science and the cultures in which it is embedded interact and shape each other." *Id.* ¶ 158. Yet, as Novoa designs the Spring 2023 course and selects its materials, she has found that because of the Stop WOKE Act, she cannot teach materials she assigned in previous iterations of the course and must revise her lecture topics. *Id.* ¶ 155. For example, Novoa will assign her book, *From Man to Ape: Darwinism in Argentina, 1870–1920*, in which she and her coauthor argue that Latin American scientists have been regarded as "derivative thinkers" based on their national origin. *Id.* ¶ 161. In another book Novoa traditionally assigned, *Picturing Tropical Nature*, the author argues that "racial differences between human groups became a chief means by which the human world was mapped" in the modern world, describing the concept of "new human sciences." *Id.* ¶ 170. Novoa's instruction not only advances arguments about the historical realities of a racial hierarchy, but also advances arguments about how those realities continue to shape science and the attainment of knowledge today. *Id.* ¶ 172. And by engaging students in discussion, reflection, and debate on these arguments, Novoa must necessarily "advance" the concept that a person's "status as . . . privileged . . . is necessarily determined by his or her race, color, [or] national origin" in violation of Florida Statutes section 1000.05(4)(a)(3). Compl. ¶¶ 162, 171.

***History of Sports.*** Similarly, Novoa has determined that her instruction in History of Sports from National to Global Contexts will violate the Stop WOKE Act. In teaching the class in prior years, Novoa has assigned an academic article by Adrian Burgos, Jr., *Left Out: Afro-Latinos, Black Baseball, and the Revision of Baseball's Racial History ("Left Out"). Id.* ¶ 176. She uses *Left Out* in lectures to advance the argument that Afro-Latino baseball players, including players in the 2000s, despite coming from different backgrounds and cultures, were reduced to their perceived racial identity. *Id.* ¶ 180. Novoa discusses not only the historical facts of baseball's desegregation, but also how the color barrier's elimination is perceived today. *Id.* ¶ 181. In another article titled *Jackie Robinson's Legacy: Baseball, Race, and Politics*, the author argues that America largely *remains* segregated by race. *Id.* ¶ 184. In short, Novoa's instruction advances and engages the question of how baseball's racial past continues to shape both the game and society today. *Id.* ¶¶ 186–89. Novoa would continue instructing on these issues but for the Stop WOKE Act's prohibition against "promoting" or "advancing" the concept that a person's "status as . . . privileged . . . is necessarily determined by his or her race [or] color[.]" *Id.* ¶¶ 182, 190, 194, 196.

5

***Modern Latin America.*** Finally, Novoa has determined that her instruction in Modern Latin America will violate the Stop WOKE Act. *Id.* ¶ 214. In that course, Novoa teaches the history of "oppression" of certain groups by other, more "privileged" groups. *Id.* ¶ 197. Novoa also "explores how socioeconomic dynamics that exist throughout Latin America *today* reflect decisions made to confront uncomfortable aspects of [their] legacies." *Id.* ¶ 201 (emphasis added). Likewise, Novoa's teaching on collective guilt necessarily "advances" the concept that "[a] person, by virtue of his or her race, color, sex, or national origin, bears personal responsibility for and must feel guilt, anguish, or other forms of psychological distress because of actions, in which the person played no part, committed in the past by other members of the same race, color, national origin, or sex[.]" *Id.* ¶ 206. In the course of her teaching on collective guilt, Novoa must "advance" the concept that a person's "status as . . . privileged . . . is necessarily determined by his or her race [or] color[]" in certain cultures to explain how societies have experienced collective guilt based on race, color, and national origin. *Id.* ¶ 205.

Because of the Stop WOKE Act, Novoa cannot determine whether her teaching will be interpreted to "endorse" a given concept. Moreover, the Stop WOKE Act's mandate that Novoa present her teaching on the prohibited

concepts in an "objective manner" heightens the risk that someone will complain when she discusses those concepts in any capacity. *Id.* ¶ 340. Consequently, Novoa will be forced to choose: censor her classes by teaching her students to less than the best of her abilities, or face catastrophic—and collective—punishment for herself, her colleagues, and her institution. *Id.* ¶ 217.

If the Stop WOKE Act is not enjoined, Novoa will be forced to remove all assigned reading materials that "promote," "advance," or otherwise support any concept prohibited by the Stop WOKE Act, such as texts identified above. *Id.* ¶ 221. Novoa will also be forced to revise her lectures to remove any subject matter that would lead her to "promote" or "advance" a concept prohibited by the Stop WOKE Act. *Id.* ¶ 222. Above all, Novoa will have to choose between self-censorship or punishment, ending discussions with and among students before they even start and prohibiting her from performing the job she was hired to do: engaging in the free exchange of ideas that is the hallmark of higher education. *Id.* ¶ 223.

Because the Stop WOKE Act's regulations do not require that a complainant be a student, faculty, or employee of the institution, complaints may be made by any person, including members of the public with no connection to the institution. *See* Bd. of Govs. Reg. Nos. 10.005(2)(a), (3).

Simply stated, there is an omnipresent threat that Novoa and other professors' teaching will be reported and investigated, causing them to self-censor.

## II.   But for the Stop WOKE Act, Recheck and Members of the First Amendment Forum would receive instruction on concepts prohibited by the Stop WOKE Act.

Plaintiff Samuel Rechek is an undergraduate student enrolled at USF. Rechek will take Novoa's Science in Cultural Context in the Spring 2023 semester, which covers the Stop WOKE Act's prohibited Concepts as described above. Compl. ¶ 14. In class, he desires to engage in debate with Novoa and his fellow students on the Stop WOKE Act's prohibited concepts. *Id.* ¶ 15.

Rechek is also the president of 1AF, which has been a registered student organization at USF since 2020. *Id.* ¶ 16. The organization's mission is to ensure that "[e]ach student has the right to speak their mind," recognizing that "[o]n a large and diverse campus, the academic value of the First Amendment . . . cannot be understated." *Id.* ¶ 16.

The interests that 1AF seeks to protect—access to information and the ability to engage in a broad range of discussion about matters of scholarly and public concern—are germane to its purpose. Its members cannot engage in a full and frank discussion of contested matters—including race and its

role in both history and modern society, among the most fraught topics in the United States—if they fear that a professor's response to their questions may be reported to administrators, an Inspector General, or state lawmakers for disciplinary action. *Id.* ¶ 235. Other members of 1AF are also interested in taking Novoa's courses, as well as other courses offered by USF, free from the censorship imposed by the Stop WOKE Act. *Id.* ¶ 232.

## ARGUMENT

The Court should deny Defendants' Motion to Dismiss. As argued first below, Plaintiffs have standing to challenge the Stop WOKE Act. Next, Plaintiffs explain that Florida waived Eleventh Amendment immunity by allowing suits against public education institutions. Finally, Plaintiffs briefly summarize arguments made in their preliminary injunction briefing to show that they have sufficiently stated claims for relief.

## I.    Plaintiffs Have Standing to Challenge the Stop WOKE Act.

Defendants fail to accept Novoa's allegations as true by arguing that the Stop WOKE Act does not proscribe her teaching. Defendants similarly fail to recognize the proper legal standard for evaluating whether a self-censoring plaintiff has established an injury for standing purposes at this stage of litigation.

*First*, Novoa has standing because she alleges that she plans to use historical examples from her courses to comment on the current state of society. Taking her allegations as true, Plaintiff has standing even under Defendants' strained construction of the Stop WOKE Act. *Second*, Defendants cannot manufacture a standing issue by cherry-picking from the eight prohibited concepts because Plaintiffs' well-pled prior restraint, vagueness, and overbreadth challenges show standing to challenge the Act in its entirety. *Third*, Defendants' argument that Rechek and 1AF lack standing fails because their argument is based solely on the false premise that Novoa has not established standing. The student Plaintiffs would have standing to challenge the Act, including each of its eight concepts, even if they brought this suit independent of any faculty member.

### A. The Stop WOKE Act proscribes Novoa's instruction of course materials and classroom discussions.

Defendants concede that Novoa has standing to "challenge concept number Seven with respect to national origin." Defs.' Mot. to Dismiss, ECF No. 33-1, (*Novoa* MTD) at 6. As such, Novoa's challenge to the Stop WOKE Act will proceed regardless of the outcome of this motion. To establish a cognizable injury based upon self-censorship, Plaintiffs need to show only that they (1) intend to "engage in a course of conduct arguably" protected by the First Amendment; (2) the Act arguably proscribes that conduct; and

(3) there is a credible threat of enforcement. *See* Pls.' Mot. for Prelim. Inj., ECF No. 19 (*Novoa* PI) at 15 (citing *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119–20 (11th Cir. 2022)).[1]

With scant citation to legal authority, Defendants attack Novoa's standing by arguing she fails to meet the second prong of this test, i.e., that the Stop WOKE Act does not arguably prohibit Novoa teaching "on historical descriptions of past understandings of race that she covers in her classes." *Novoa* MTD at 6. Defendants claim that "the [Stop WOKE] Act does not, in the main, prohibit descriptive, historical discussion of racism in the past." *Id.* at 6–7. In doing so, Defendants fail to accept the Complaint's allegations as true, implausibly characterizing Novoa's teaching to be limited to descriptions of historical understandings of race.

Defendants mischaracterize the degree to which Novoa's teaching focuses solely on the past. For example, Defendants argue that Novoa's teaching in the History of Sports does not endorse the concept that a person's "'status as . . . privileged . . . is necessarily determined by his . . . race [or] national origin'—*today*, [but instead] at some period in the past." *Id.* at 8. Yet Novoa explicitly alleges that her instruction on *Left Out* "is pedagogically

---

[1] Not only do Plaintiffs' verified allegations meet that standard at the motion to dismiss level, but those allegations and Plaintiffs' other evidence meet that standard at the preliminary injunction level, too. *Novoa* PI at 14–18.

relevant to the course because it offers an argument as to the role race and national origin played in the color barrier and how its elimination is perceived *today*." Compl. ¶ 181 (emphasis added). Novoa further alleges that *Jackie Robinson's Legacy* specifically "argues that despite making progress on racial issues, the United States *remains* segregated by race." *Id.* ¶ 184 (emphasis added). Novoa intends on advancing both of these contemporary views in her course. *Id.* ¶¶ 179, 189.

Defendants similarly mischaracterize Novoa's teaching in Science in Cultural Context, claiming that her teaching is "merely factual descriptions about historical understandings of race . . . ." *Novoa* MTD at 8. Novoa's instruction does not simply acknowledge "historical understandings of race," but instead uses those historical events to help analyze how race continues to play a role in the attainment of knowledge in science today. For example, in *Picturing Tropical Nature*, the author argues that "racial differences between human groups became a chief means by which the human world was mapped" in the modern world. Compl. ¶ 170. In her book, she and her coauthor argue that Latin American scientists have been regarded as "derivative thinkers" based on their national origin. *Id.* ¶ 155. Contrary to Defendants' arguments, Novoa does not believe that the impact of these racial hierarchies suddenly stopped. Thus, in engaging students in

discussion, reflection, and debate on these books, Novoa alleges that she *presently* "endorses the viewpoints she advances in [her] book," including that a person's "status as . . . privileged . . . is necessarily determined by his or her race, color, [or] national origin" in violation of Florida Statutes Section 1000.05(4)(a)(3). *Id.* ¶¶ 162, 171.

Finally, Defendants concede that Novoa's teaching on collective guilt in her Modern Latin America course violates the Stop WOKE Act but still argue that the remainder of the course is not proscribed because it references "'other cultures' and their past experiences[.]" *Novoa* MTD at 10. However, Novoa alleges that "she explores how socioeconomic dynamics that *exist* throughout Latin America *today* reflect decisions made to confront uncomfortable aspects of [their] legacies." Compl. ¶ 201 (emphases added).

Ultimately, the State misunderstands the degree to which Novoa, as a cultural historian, seeks to teach students about the *current* state of society based on lessons learned from the past. As the saying goes, those who do not learn history are doomed to repeat it. Yet, Defendants seek to prohibit Novoa—and all historians teaching in Florida's institutions of higher education—from frankly discussing the historical development of certain ideas and their ongoing impact on today's world. Instead, she must speak through the "State's voice" and declare that differential treatment of

individuals based on their race, national origin, and sex stopped at some undetermined time in the past. This may be the State's current view, but it cannot be the only view permitted in our public college classrooms. The First Amendment does not tolerate such state-mandated orthodoxy.

### B. Novoa has standing to challenge all eight concepts of the Stop WOKE Act because they impose an unconstitutionally vague, overbroad, and viewpoint discriminatory prior restraint on her speech.

Defendants also claim that Novoa lacks standing to challenge the First, Second, Third, Fourth, Fifth, Sixth, and Eighth Concepts because she does not "allege any injury" flowing from them. *Novoa* MTD at 1. However, Defendants again ignore the well-pled facts in the Verified Complaint and broadly state that she "'must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought.'" *Id.* at 4 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). However, as this Court recognized in denying a motion to dismiss the college professor in *Falls*, "[a]t this stage, the teachers need only show that the challenged provisions 'at least arguably' forbid their desired expression." *Falls v. DeSantis*, No. 4:22-cv-166-MW-MJF, (N.D. Fla. July 8, 2022), ECF No. 68, at *8 (quoting *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 (11th Cir. 2010)). Novoa has satisfied that burden as to each concept of the Stop WOKE Act.

Novoa has alleged that each of the Stop WOKE Act's eight concepts impose an ongoing vague, overly broad, and viewpoint discriminatory prior restraint on her ability to engage in free and robust debate in class. Compl. ¶ 217. Indeed, Defendants ignore Novoa's allegations explaining that the Stop WOKE Act's requirement that professors teach all eight concepts in an "objective manner without endorsement" is forcing her to "self-censor during debates amongst students, prohibiting her from engaging in the free exchange of ideas that is the hallmark of a successful debate." *Id.* ¶¶ 223, 276–77. This Court has already opined that "the unconstitutionally vague 'objectivity' requirement, which governs the entire challenged provision, renders the statute as a whole unconstitutionally vague." *Honeyfund.com, Inc. v. DeSantis*, No. 4:22CV227-MW/MAF, 2022 WL 3486962, at *14 (N.D. Fla. Aug. 18, 2022). Moreover, Defendants have a cramped and narrow view of standing when it comes to the likelihood that other professors, students, and speakers will be negatively impacted by the Stop WOKE Act in other courses and fields of study. Defendants would have the Plaintiffs name all of the other affected courses, together with the associated professors and full roster of registered students, as a condition for standing. However, the overbreadth doctrine allows Plaintiffs to demonstrate the chilling effect of the law without pleading every possible application, effectively representing

the viewpoints of others harmed but not before the Court. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006) ("[T]he overbreadth doctrine allows the plaintiff to champion the free speech rights of parties not before the court to establish that a provision is unconstitutionally overbroad.") In short, the Stop WOKE Act will inevitably chill the speech of professors and inquiring students across the University, not just those before the Court today.

Effectively, Novoa and other faculty understand that in the likely event one of these eight topics comes up in a classroom debate, they must toe the State's line and self-censor. *Austin v. Univ. of Fla. Bd. of Trs.*, 580 F. Supp. 3d 1137, 1159 (N.D. Fla. 2022) ("In sum, this Court finds that Plaintiffs have suffered injury through self-censorship and through the existence of an impermissible prior restraint."). Novoa has alleged that the Stop WOKE Act's concepts are acting as unconstitutionally vague, overly broad, and viewpoint discriminatory prior restraints on her speech. Compl. ¶ 288. As such, Novoa has met her burden of establishing that each concept of the Stop WOKE Act proscribes her speech and will force her to continue to self-censor unless enjoined based upon the Verified Complaint.

16

### C.   Recheck and First Amendment Forum Have Standing.

Defendants and Plaintiffs agree that "Plaintiff Rechek's standing is entirely derivative of Plaintiff Novoa's standing." *Novoa* MTD at 11. Because the Stop WOKE Act proscribes Novoa's constitutionally protected teaching, as described above, it also proscribes Rechek's right to receive information in Novoa's courses. Similarly, Defendants acknowledge that 1AF will also be able to establish standing if Rechek establishes standing. *Id*. at 11.

However, 1AF's other students are also eager to receive Novoa's instruction, and they will take her courses when able. At this stage of litigation, that is sufficient. In denying Defendants' motion to dismiss the student in the *Falls* matter, the court noted that the student could not establish standing at the preliminary injunction stage but succeeded based on the allegations in the complaint. *Falls*, No. 4:22-CV-166-MW-MJF, at *12–14. Taken as true, 1AF's allegation that its members seek to take Novoa's courses is sufficient to confer standing because the students would be denied access to that information if the Stop WOKE Act is not enjoined. Compl. ¶ 232.

## II.   Florida Waived Eleventh Amendment Immunity by Allowing Suits Against Public Education Institutions.

Defendants claim sovereign immunity based on the Eleventh Amendment to Recheck and 1AF's claim against Defendant USF Board of

Trustees. *Novoa* MTD at 14. However, Florida has waived sovereign immunity because it consented to suits against "a public institution of higher education . . . in a court of competent jurisdiction" for violations of the CFEA. Fla. Stat. § 1004.097.

Here, Recheck and 1AF bring a claim under the CFEA against the USF Board of Trustees, unquestionably a "public institution of higher education" with the capacity to be sued. *See* Fla. Stat. §§ 1001.72(1), 1004.097(4). Because Defendants have waived sovereign immunity and this claim relates to the federal causes of action, Defendants' sovereign immunity argument fails.

Defendants also argue that even if sovereign immunity does not bar Plaintiffs' CFEA claim, the Stop WOKE Act does. Defendants contend that the two statutes do not conflict with one another and even if they did, the Stop WOKE Act would govern. Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 34, at 22. Florida law provides that "[w]hen reconciling statues that may appear to conflict, the rules of statutory construction provide that a specific statute will control over a general statute, and a more recently enacted statute will control over older statutes." *Fla. Virtual Sch. v. K12, Inc.*, 148 So.3d 97, 102 (Fla. 2014) (citations omitted). However, these rules of statutory construction only apply if both of the conflicting statutes are

deemed constitutional. *Alexdex Corp. v. Nachon Enters.*, 641 So.2d 858, 861 (1994) ("Where we have conflicting statutes, we first address the constitutionality of these statutes. If each statute, standing alone, passes constitutional muster, then we attempt to reconcile, if possible, the inconsistency."). Here, because the Stop WOKE Act does not pass constitutional muster, the CFEA must prevail over the Stop WOKE Act.

## III.  Plaintiffs Have Sufficiently Pled That the Stop WOKE Act Violates the First Amendment.

Plaintiffs incorporate by reference all arguments made in their Memorandum of Law in Support of Motion for Preliminary Injunction and their Reply Memorandum. *See generally Novoa* PI; *see also* Pls.' Reply to Defs.' Resp. in Opp'n to Pls.' Mot. for Prelim. Inj., concurrently filed with this Opposition (*Novoa* Reply). Those arguments refute Defendants' arguments incorporated by reference in the Motion to Dismiss. *See Novoa* MTD at 15–16. As demonstrated in Plaintiffs' briefing, the government-speech doctrine does not apply to academic speech and tramples on students' rights to receive information. *Novoa* PI at 19–23; *Novoa* Reply at 4–11. Further, the Stop WOKE Act fails any level of scrutiny. *Novoa* PI at 24–28; *Novoa* Reply at 12–14. When analyzed under the proper *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) (*NTEU*) balancing test, the Stop WOKE Act fails because the rights of teachers to teach and students to

receive instruction outweighs the government's interest in imposing a speech code that does not alleviate any harm in a direct and material way. *Novoa* PI at 29–32; *Novoa* Reply at 20–23. Finally, the Stop WOKE Act is unconstitutionally vague and overly broad, as it is simply unintelligible to a reasonable person and sweeps up a broad swath of protected speech. *Novoa* PI at 33–36; *Novoa* Reply at 14–17.

## CONCLUSION

As demonstrated above, Defendants fail to accept all allegations in the Verified Complaint as true. As a cultural historian, Novoa uses historical examples to teach students lessons about society today and promote critical thinking about how our contemporary issues have been shaped by the past. Rechek and the other 1AF students have an earnest desire to learn those lessons and use their knowledge to improve the world.

Socrates, put to death for corrupting the youth of Athens, observed centuries ago that there is only one good, knowledge, and one evil, ignorance. By passing the Stop WOKE Act, imposing an ideological prior restraint on professors and students, and arguing for dismissal of this lawsuit, Defendants have chosen ignorance and censorship over the pursuit of knowledge in an insincere attempt to protect the youth of Florida. The First Amendment, however, always defends the fearless search for the knowledge

in our institutions of higher education. As such, this Court should deny Defendants' Motion to Dismiss in its entirety.

DATED:      October 7, 2022

Respectfully Submitted,

/s/ Greg H. Greubel
GREG HAROLD GREUBEL*
PA. Bar No. 321130; NJ No. 171622015
ADAM STEINBAUGH*
PA. Bar No. 326475
JT MORRIS*
TX Bar No. 2409444
FOUNDATION FOR INDIVIDUAL RIGHTS AND
    EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel:   (215) 717-3473
Fax:   (215) 717-3440
greg.greubel@thefire.org
adam@thefire.org
JT.Morris@thefire.org

/s/ Gary S. Edinger
GARY S. EDINGER, ESQUIRE
Fla. Bar No. 0606812
BENJAMIN, AARONSON, EDINGER &
    PATANZO, P.A.
305 N.E. 1st Street
Gainesville, Florida 32601
Tel:   (352) 338-4440
Fax:   (352) 337-0696
GSEdinger12@gmail.com

*Admitted *Pro Hac Vice*

    Counsel for Plaintiffs Adriana Novoa, Sam Rechek, and the First
    Amendment Forum

21

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I hereby certify that this motion and memorandum of law contains

4,425 words.

/s/ Greg H. Greubel
Greg H. Greubel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2022, a copy of this document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

/s/ Greg H. Greubel
Greg H. Greubel